■ GWEN M. MOFFRE, Appellant, v ANTHONY P. MOFFRE, Respondent. [815 NYS2d 315]—

Rose, J. Appeal from an order of the Supreme Court (Scarano, Jr., J.), entered April 18, 2005 in Saratoga County, ordering, inter alia, child support, upon a decision of the court.

Plaintiff and defendant were divorced in 2001 by a judgment that incorporated the parties' separation agreement as modified by their settlement stipulation. In the stipulation, the parties agreed that $500 per week was the presumptive amount of defendant's support obligation for their two children under the

Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b]). In 2003, defendant petitioned for a downward modification of child support, alleging a significant recent reduction in his income. Plaintiff cross-petitioned for an upward modification of child support and to enforce the divorce judgment's direction that defendant make semiannual payments of support arrears. At the parties' request, Supreme Court considered these petitions with their pending motions for review of their settlement stipulation and made a de novo determination of defendant's child support obligation under the Child Support Standards Act. After a hearing, the court found defendant's earning capacity to be $105,000 and imputed $40,000 to plaintiff. After subtracting FICA contributions, the court combined the parties' net incomes and determined applicable child support percentages to be 25% of the first $80,000 of combined income and 8% of the balance, resulting in defendant's weekly child support obligation of $336.63. Only plaintiff appeals.*

Despite plaintiff's argument that defendant is capable of earning $143,500 per year, we find that the record supports Supreme Court's imputation of $105,000. Trial courts possess considerable discretion to impute income in fashioning a child support award (*see Matter of Hurd v Hurd*, 303 AD2d 928, 928 [2003]; *Matter of Bosshold v Bryant-Bosshold*, 243 AD2d 857, 858 [1997]; *Matter of Susan M. v Louis N.*, 206 AD2d 612, 613 [1994]) and they are not constrained by the financial accounts given by the parties or their experts (*see Matter of Collins v Collins*, 241 AD2d 725, 727 [1997], *appeal dismissed and lv denied* 91 NY2d 829 [1997]). Income may be imputed "based upon a prior employment experience, as well as such parent's future earning capacity in light of that party's educational background" (*Matter of Susan M. v Louis N., supra* at 613 [citation omitted]; *see Matter of Bianchi v Breakell*, 23 AD3d 947, 949 [2005]).

Here, the record reveals that, after the parties' divorce, defendant left his father-in-law's business where he had been earning $105,000 per year plus bonuses and started his own competing business from which he drew a salary of only $55,000 in 2002 and 2003. Although plaintiff's expert testified that defendant could draw as much as $143,500 from his business, other evidence indicated that defendant's business had recently sustained losses and could only support an annual salary of approximately $50,000. Supreme Court credited some but not all of the

---

* Although defendant contends that Supreme Court imputed too much income to him and awarded too much child support, he took no appeal and, thus, these issues are not properly before us (*see e.g. Hendricks v Hendricks*, 13 AD3d 928, 931 [2004]).

testimony of each party's expert, and the imputed amount of $105,000 was both within the range of amounts to which plaintiff's expert testified and equal to the amount of defendant's prior earnings minus bonuses. Given its opportunity to assess witness credibility, we cannot say that the court erred in imputing that amount to defendant.

Nor are we persuaded that Supreme Court erred in awarding only 8% of the combined parental income in excess of $80,000 in determining defendant's child support obligation. Supreme Court considered the factors listed in Domestic Relations Law § 240 (1-b) (f) and appropriately articulated its reasons for deviating from the statutory percentage (*see Holterman v Holterman*, 3 NY3d 1, 13-15 [2004]; *Matter of Cassano v Cassano*, 85 NY2d 649, 655 [1995]). While plaintiff argues that 25% should have been applied to the excess income because such amount would be necessary to continue the children's predivorce standard of living, we are not convinced that Supreme Court abused its discretion by considering the fact that, due to her remarriage, plaintiff has virtually no living expenses and the children now have a higher standard of living (*see Matter of Carr v Carr*, 309 AD2d 1001, 1004 [2003]; *cf. Hammack v Hammack*, 20 AD3d 700, 702-703 [2005], *lv dismissed* 6 NY3d 807 [2006]).

However, we agree with plaintiff that Supreme Court did abuse its discretion in imputing income of $40,000 as the amount she could earn if she were employed as a secretary. As there is no evidence in this record that plaintiff or anyone else with a similar educational and employment history could earn $40,000 per year from such employment, the imputation of that amount was speculative (*see Matter of Bianchi v Breakell, supra* at 949; *Matter of Perry v Pica*, 22 AD3d 903, 905 [2005]; *Alessi v Alessi*, 289 AD2d 782, 784 [2001]). The only evidence of plaintiff's income was her testimony that she received $6,000 in gross rental income and her 2003 financial disclosure affidavit contained in the record on appeal, in which she identified a realtor as her employer and described $135.62 per week as the average real estate commissions she earned in 2002. Supreme Court, however, noted only plaintiff's testimony regarding her rental income and then calculated her income solely upon the imputed $40,000 earning capacity. We cannot determine from this record whether commissions comparable to what plaintiff earned in 2002 should be imputed to her. Also, given plaintiff's age and good health, the record could support an imputation based upon the applicable minimum wage (*see Matter of Bukovinsky v Bukovinsky*, 299 AD2d 786, 787 [2002], *lv dismissed* 100 NY2d 534 [2003]), but we cannot determine whether

such income should be in addition to, or in place of, her commissions. It further appears that Supreme Court reduced defendant's imputed income of $105,000 by more than the amount of FICA that would have been deducted on such income in 2003. Accordingly, we must reverse this aspect of Supreme Court's order and remit the matter for recalculation of the amount of each party's net income and defendant's resulting child support obligation (*see Milnarik v Milnarik*, 23 AD3d 960, 963-964 [2005]; *Matter of Bianchi v Breakell, supra* at 949-950).

Finally, we do not agree that Supreme Court abused its discretion in denying plaintiff's application for awards of expert and counsel fees. Inasmuch as the court did not make the requisite finding of an intentional failure to pay support or compel defendant to pay the support arrears, an award of counsel fees is not mandated by Family Ct Act § 438 (b). Nor will we disturb Supreme Court's finding that plaintiff has sufficient resources to pay her own counsel and expert fees (*see Wacholder v Wacholder*, 188 AD2d 130, 137 [1993]).

Crew III, J.P., Spain, Carpinello and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as determined the child support award; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision and, pending said proceedings, the child support provisions of the September 28, 2001 judgment of divorce shall remain in full force and effect; and, as so modified, affirmed.