Aiken v Aiken (2025 NY Slip Op 06944)

Aiken v Aiken

2025 NY Slip Op 06944

Decided on December 11, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 11, 2025

CV-24-1461
[*1]Russell Aiken, Appellant,
vKasey Aiken, Respondent.

Calendar Date:October 15, 2025

Before:Pritzker, J.P., Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ.

Theresa M. Suozzi, Saratoga Springs, for appellant.
Tebano & Associates, PLLC, Latham (Maria C. Tebano of counsel), for respondent.

Ceresia, J.
Appeal from a judgment of the Supreme Court (Rebecca Slezak, J.), entered September 3, 2024 in Montgomery County, granting, among other things, plaintiff a divorce, upon a decision of the court.
Plaintiff (hereinafter the father) and defendant (hereinafter the mother) were married in 2008 and have three children (born in 2011, 2012 and 2014). In 2022, the husband commenced this divorce action. In 2023, the parties agreed to joint legal and equally shared physical custody of the children and, in 2024, they resolved all remaining issues with the exception of child support. A two-day trial was then held on that issue. Following trial, the mother filed an application for counsel fees and the father opposed her request. Supreme Court issued a decision and order awarding the mother child support and counsel fees, which was incorporated into the subsequent judgment of divorce. The father appeals.[FN1]
Turning first to the issue of child support, Supreme Court's determination was made as follows. The court found that the father's adjusted gross income was $130,618 and the mother's was $99,182.[FN2] The court then applied the Child Support Standards Act (hereinafter CSSA) formula to the parties' combined income up to the statutory cap, concluding that the father's pro rata share of support for the three children was $2,386 per month (see Domestic Relations Law § 240 [1-b] [c] [1], [2]). As for income above the cap, the court considered those statutory factors it found relevant to the case and determined that they all weighed in the mother's favor (see Domestic Relations Law § 240 [1-b] [f]). As a result, the court utilized the statutory formula for the parties' income above the cap, with the father's pro rata share calculated at $645 per month (see Domestic Relations Law § 240 [1-b] [c] [3]), and ordered the father to pay his total monthly pro rata share of $3,030, along with child support arrears of $54,754 [FN3] and counsel fees of $21,505.
The father does not dispute these calculations but contends that Supreme Court erred in granting the mother child support in accordance with the CSSA rather than deviating from the statutory guidelines, claiming that the guideline amount is unjust. We disagree. The trial court must order the noncustodial parent to pay his or her pro rata share of the basic support obligation in accordance with the CSSA unless the court finds that amount to be unjust or inappropriate based upon consideration of several factors (see Domestic Relations Law § 240 [1-b] [f]; Holterman v Holterman, 3 NY3d 1, 14 [2004]; Bast v Rossoff, 91 NY2d 723, 727 [1998]; Donna E. v Michael F., 185 AD3d 1179, 1181 [3d Dept 2020]). "[T]he CSSA contains a rebuttable presumption that application of the guidelines will yield the correct amount of child support, thereby placing the burden on the party contesting application of the statutory percentage to establish that the pro rata share of support is unjust or inappropriate" (Jennifer VV. v Lawrence WW., 183 AD3d 1202[*2], 1204 [3d Dept 2020] [internal quotation marks and citation omitted]).
The father claims that Supreme Court should have reduced his presumptive child support obligation given that the children spend half their time in his care, and he must pay their expenses during that time. It is well settled, however, that "[s]hared custody arrangements do not alter the scope and methodology of the CSSA" (Bast v Rossoff, 91 NY2d at 732). Thus, we have " 'consistently held that the costs of providing suitable housing, clothing and food for a child during custodial periods do not qualify as extraordinary expenses so as to justify a deviation from the presumptive amount' of child support" (Donna E. v Michael F., 185 AD3d at 1181, quoting Matter of Mitchell v Mitchell, 134 AD3d 1213, 1215-1216 [3d Dept 2015]).
The father also argues that the presumptive award of child support renders him "destitute," but he did not submit any evidence at trial, nor did his testimony reflect, that this obligation would leave him without sufficient resources to meet his own needs. We further note that, contrary to the father's assertion, the disparity in incomes between the parties is not nominal — rather, the father earns approximately 25% more than the mother. With respect to the father's remaining arguments as to why, in his view, the child support award was unjust, including his claim that the mother is living extravagantly and will be able to provide for the children in a way that he cannot, we have considered these contentions and find them to be speculative or without merit. Under these circumstances, and having reviewed the record, we cannot say that Supreme Court abused its discretion in awarding child support in accordance with the CSSA and declining to deviate therefrom (see Piraino v Piraino, 240 AD3d 1043, 1047 [3d Dept 2025]; Donna E. v Michael F., 185 AD3d at 1181; Arthur v Arthur, 148 AD3d 1254, 1257 [3d Dept 2017]).
Next, the father argues that Supreme Court improperly granted the mother's application for counsel fees. In a divorce action, there is a rebuttable presumption that counsel fees shall be awarded to the less monied spouse (see Domestic Relations Law § 237 [a]; Angello v Angello, 237 AD3d 1318, 1322 [3d Dept 2025]). "[A]n award of counsel fees should consider the totality of the circumstances, including but not limited to the parties' financial circumstances; the relative merit of the parties' positions; the time commitment involved; the complexity and difficulty of the matters; the nature of the services provided; counsel's experience; the results obtained; and the cause and effect of unnecessary delays" (Victoria M. v Christopher L., 236 AD3d 1210, 1211 [3d Dept 2025]; see Kopko v Kopko, 229 AD3d 974, 980 [3d Dept 2024], appeal dismissed 42 NY3d 1086 [2025]). "Absent an abuse of discretion, a court's determination directing a party to pay counsel fees will not be disturbed" (Morrissey v Morrissey, 224 AD3d 940, 941 [3d Dept 2024] [internal quotation [*3]marks, brackets and citations omitted]).
On the record before us, we discern no basis upon which to conclude that Supreme Court abused its discretion in awarding counsel fees. In that regard, we note that the court took into account needless delay caused by the father, including by inexplicably failing for two years to sign the parties' agreement concerning equitable distribution of the marital residence, subjecting the mother to a higher interest rate when she was eventually able to refinance the mortgage. The court also observed that the father had unreasonably taken the position that, despite being the monied spouse, he should pay no child support at all, thereby resulting in a trial on that issue. Further, the court noted that the mother's attorney was experienced, and her hourly rate was reasonable; nevertheless, the court reviewed counsel's request for $34,448 and substantially reduced it to $21,505. Under these circumstances, the court's award of counsel fees will not be disturbed (see Victoria M. v Christopher L., 236 AD3d at 1211; Curley v Curley, 195 AD3d 1183, 1185-1186 [3d Dept 2021], lv denied 38 NY3d 905 [2022]; compare Macaluso v Macaluso, 145 AD3d 1295, 1298 [3d Dept 2016]).
Pritzker, J.P., Reynolds Fitzgerald, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed, with costs.

Footnotes

Footnote 1: Although the father's appeal is from the decision and order rather than from the judgment of divorce, we exercise our discretion to consider the appeal as having been properly taken from the judgment (see CPLR 5520 [c]; Heber v Heber, 237 AD3d 1276, 1277 n 1 [3d Dept 2025]).

Footnote 2: The court declined the father's invitation to impute additional income to the mother, a finding the father does not dispute on appeal.
Footnote 3: Other than determining the total amount of arrears, Supreme Court did not order any particular rate of payment, nor does the record reflect the rate at which the father is paying the arrears.